UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SANDRA BRYANT BENDER**, | 2:19-cv-13177 |
| Plaintiff, | |
| v. | HON. TERRENCE G. BERG |
| **GENERAL DYNAMICS LAND SYSTEMS, INC., ET AL.**, | **ORDER GRANTING MOTION TO DISMISS** |
| Defendants. | |

Plaintiff Saundra Bryant Bender, an African-American woman, claims she was discriminated against by her employer, General Dynamics Land Systems, Inc. ("General Dynamics") as well as by her manager at the company, Vickie DuQuet. Specifically, Plaintiff alleges DuQuet gave her unwarranted negative performance reviews and placed Plaintiff on Performance Improvement Plans ("PIPs") that she could not possibly meet. Because of these alleged intolerable employment conditions, Plaintiff claims she was left no alternative but to quit. After resigning, she filed the instant lawsuit alleging race and gender discrimination in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2202, as well as retaliation under Title VII.

Now before the Court is Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 9. The motion to dismiss will be granted because Plaintiff has failed to adequately plead that she suffered a legally cognizable adverse employment action, a prerequisite to her discrimination claims. Additionally, concerning her Title VII retaliation claim, Plaintiff has not sufficiently alleged a causal connection between her protected activity and the claimed materially adverse employment actions. Finally, the Title VII claims must be dismissed as to Defendant DuQuet on the additional basis that the federal statute does not create individual supervisory liability. The motion to dismiss will be granted, and Plaintiff's Complaint dismissed. The Court will grant her leave to amend her pleading within 30 days.

## BACKGROUND

Plaintiff began working for General Dynamics in 2005. ECF No. 1, PageID.2 (Compl.). She claims she performed well in her role as a General Purchasing Senior Representative and consistently received positive performance reviews. ECF No. 1, PageID.2. Consistent with this allegation, Plaintiff was promoted to Buyer Specialist at the company in 2014. ECF No. 1, PageID.2. Problems emerged, however, when General Dynamics assigned Plaintiff a new supervisor in 2017, Defendant DuQuet. ECF No. 1, PageID.2.

After DuQuet became Plaintiff's supervisor, Plaintiff claims she was "subjected . . . to materially different standards and terms and conditions of employment" because of her race and gender. ECF No. 1, PageID.2. In December 2018, DuQuet gave Plaintiff a "negative" performance review based on what Plaintiff contends were "objectively false reasons". ECF No. 1, PageID.3. The Complaint does not specify exactly how the review was negative nor does it explain what about it was false. One month later, Defendants placed Plaintiff on a 90-day Performance Improvement Plan that she says rested on "false information" and "contained terms and conditions of employment that differed significantly from [those given to] similarly situated white and male employees." ECF No. 1, PageID.3. Again, the Complaint provides no specific allegations of fact stating what the false information was, why it is believed to be false, or how the terms and conditions of the PIP or other aspects of Plaintiff's employment experience differed from those of her white male colleagues. Nor does the Complaint contain any information about who these similarly situated white male employees are, or what their performance or conditions of employment were like.

On April 10, 2019, Plaintiff filed an internal complaint with General Dynamics' Human Resources Department claiming that she was being discriminated against by Defendants on the basis of her "race, age, and disability."[1] ECF No. 1, PageID.3. She also informed Defendants that

---

[1] Plaintiff's Complaint does not assert any claim for age or disability discrimination.

she had filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 1, PageID.3. One week later, Plaintiff filed an internal ethics complaint with General Dynamics, this time alleging "race, gender, age, and disability" discrimination." ECF No. 1, PageID.3. Defendants apparently took no steps to address these complaints and, according to Plaintiff, continued to single her out because of "her race and gender." ECF No. 1, PageID.3.

Soon thereafter, on May 30, 2019, Defendants placed Plaintiff on a second, this time indefinite[2], PIP. ECF No. 1, PageID.3. This, she claims, was retaliation for her complaints of discrimination. ECF No. 1, PageID.3. The second PIP, Plaintiff argues, like the first, "contained demonstrably false information and discipline," which she disputed with her employer. ECF No. 1, PageID.4. Despite Plaintiff's complaints to management and proof she says she gathered (but does not describe in her pleading) that DuQuet "singled her out and disciplined her for false reasons," Defendants took no remedial action. ECF No. 1, PageID.4.

On June 3, 2019, Plaintiff refiled her discrimination charge with the EEOC, complaining of race, gender, and age discrimination as well as retaliation. That same day, Plaintiff told Defendants she required a medical leave of absence "due to Defendants' actions." ECF No. 1, PageID.4. About two weeks later, Plaintiff contacted General Dynamics

---

[2] Although Plaintiff characterizes the May 30, 2019 PIP as indefinite, Defendants refer to it simply as a PIP, without reference to its duration.

Human Resources regarding the status of her internal discrimination complaints but received no response. ECF No. 1, PageID.4. The following month, Plaintiff's healthcare provider cleared her to return to work. ECF No. 1, PageID.4. Plaintiff again got in touch with Human Resources to determine whether her complaints were being redressed. ECF No. 1, PageID.4. She says she was told by the company that "no remedial action would be taken." ECF No. 1, PageID.4. Upon learning that General Dynamics would not address the discrimination she claimed to have experienced, Plaintiff asserts she was "forced" to resign from the company on July 12, 2019, just six weeks after filing her first complaint of discrimination. ECF No. 1, PageID.4.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes courts to dismiss a lawsuit if they determine that the plaintiff has "fail[ed] to state a claim upon which relief can be granted." In evaluating a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Although Rule 8(a) requires only that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), plaintiffs must provide "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action" in support of their claims. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

## DISCUSSION

### A. Plaintiff's Title VII claims against Defendant DuQuet be dismissed on the basis that Title VII does not provide for individual supervisory liability.

The Sixth Circuit held in *Walthen v. General Electric Co.,* 115 F.3d 400, 404 (6th Cir. 1997) that Congress, in enacting Title VII, did not intend to create individual liability for employees or supervisors "who do not otherwise qualify as an 'employer' " under the statute. *See Harper v. City of Cleveland,* 781 Fed. Appx. 389, 393 (6th Cir. 2019) ("Title VII does not impose liability on supervisory personnel."). Because DuQuet, who Plaintiff is suing as "a manager and agent" of General Dynamics, does not herself qualify as an "employer" under Title VII, Plaintiff's discrimination claims against her must be dismissed. The outcome is different, however, when it comes to Plaintiff's ELCRA claims; that statute does provide for individual liability.

Congress defined an "employer" under Title VII as "a person engaged in industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 2000e(b). Relying in part on this express limitation of liability to employers with fifteen or more employees, the Sixth Circuit concluded in *Walthen* that it

6

was " 'inconceivable' that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees." *Wathen*, 115 F.3d at 406 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995)). Plaintiff does not allege that DuQuet herself has fifteen employees or otherwise independently qualifies as an "employer" for Title VII purposes. Accordingly, because Title VII does not impose individual liability on supervisory personnel, Plaintiff's claims against DuQuet must be dismissed.

Although it is well settled in this circuit that a supervisor cannot be held liable in her individual capacity for Title VII violations, there is some precedent indicating that a supervisor may be held liable in her official capacity "upon a showing that he or she should be considered the 'alter ego' of the employer." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 n.2 (6th Cir. 2001). The Sixth Circuit has not "clearly and definitively ruled" on the issue. *See id.* And district courts in this circuit have considered this alter ego theory of individual liability "with skepticism." *Doe v. Grand Co., LLC*, No. 18-cv-13123, 2020 WL 806031, at *9 (E.D. Mich. Feb. 18, 2020) (Borman, J.) (collecting cases). Regardless of whether a plaintiff may hold an individual supervisor liable under Title VII by suing her in her official capacity, however, Plaintiff has not specifically alleged that DuQuet had such "significant control" over Plaintiff's working conditions that she could be considered an "alter

ego" of General Dynamics. *See id.* Plaintiff's claims against DuQuet will be dismissed.

Dismissal of the Title VII claims as to DuQuet is further warranted because Plaintiff did not attempt to defend those claims in response to Defendants' motion to dismiss. *See Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007) (explaining that a plaintiff abandons a claim she fails to raise in her brief opposing the defendant's motion to dismiss).

Although Plaintiff's Title VII claims must be dismissed as to DuQuet because Title VII does not create individual supervisory liability, her state-law discrimination claims cannot be dismissed on that basis. Unlike Title VII, "ELCRA does not categorically bar claims against an individual defendant who is an agent of a defendant employer." *Wingo v. Mich. Bell Tel. Co.*, No. 16-cv-12209, 2019 WL 78898, at *8 (E.D. Mich. Jan. 2, 2019) (Borman, J.). To the contrary, agents of an employer are considered employers under ELCRA and may be held liable accordingly. *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 861 (Mich. 2005). Accordingly, Plaintiff's state-law claims for violation of the ELCRA cannot be dismissed as to DuQuet on the basis that she is an individual employee or agent of General Dynamics.

## B. The Complaint fails to plead facts sufficient to establish that Plaintiff was constructively discharged.

Plaintiff has not adequately alleged that she was constructively discharged from her position at General Dynamics because she has not

pled facts that rise to the level of intolerable working conditions. Because constructive discharge is the only legally cognizable adverse employment action Plaintiff identifies in her current Complaint, by failing to sufficiently plead constructive discharge Plaintiff fails to allege a required element of her prima facie case for discrimination under Title VII and the ELCRA. Those claims must accordingly be dismissed for failure to establish a prima facie case.

To establish a prima facie case of discrimination under Title VII, a plaintiff must allege that: (1) she is a member of a protected class; (2) she was qualified for the job and performed it satisfactorily; (3) despite her qualifications and performance, she suffered an adverse employment action; and (4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of her protected class. *Laster v. City of Kalamazoo,* 746 F.3d 714, 727 (6th Cir. 2014).

Defendants do not dispute that Plaintiff has adequately pled the first two other elements of her prima facie case: that she is a member of a protected class; and was qualified for her position and performed it satisfactorily. As set forth in the Complaint, Plaintiff is an African American woman and thus a member of two protected classes. ECF No. 1, PageID.2. Plaintiff's factual allegations that she worked for General Dynamics for over 13 years, received positive performance reviews, and was promoted are sufficient to establish she was qualified for her job and

9

performed satisfactorily. *See* ECF No. 1, PageID.2. The first two elements of Plaintiff's prima facie case are thus well-pled.

Defendants urge, however, that Plaintiff has not met her pleading burden as to the third element of her prima facie case: that she suffered an adverse employment action. Reviewing the Complaint's allegations, the Court agrees. In the context of a Title VII claim, an adverse employment action is defined as a "materially adverse change in the terms or conditions" of employment. *Kocsis v. Multi-Care Mgmt. Inc.,* 97 F.3d 876, 885 (6th Cir. 1996). An adverse employment action constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998).

A plaintiff may establish an adverse employment action by showing that she was "constructively discharged," meaning that her employer purposely made her working conditions so intolerable that the plaintiff was involuntarily forced to resign. *Kocsis*, 97 F.3d at 886. To demonstrate constructive discharge, a plaintiff must allege that: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; and (2) the employer did so with the intention of forcing the employee to quit. *Logan v. Denny's, Inc.,* 259 F.3d 558, 568–69 (6th Cir. 2001). Among the factors the Sixth Circuit has identified as relevant to assessing whether a reasonable person would have felt she

was experiencing intolerable working conditions (the first prong of constructive discharge), are demotion, reduction in salary, reduction in job responsibilities, reassignment to menial or degrading work, harassment by the employer intended to encourage the employee's resignation, and offers of early retirement or employment on less favorable terms. *Id.* at 569 (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

Here, the intolerable working conditions Plaintiff claims she was subjected to include receiving a negative performance review from DuQuet based on "objectively false reasons," and being placed on a 90-day PIP and, subsequently, an indefinite PIP. ECF No. 1, PageID.3. But none of these actions by Defendants, nor any of the other working conditions described in the Complaint, rise to the level of what a reasonable person would view as intolerable, at least as that concept has been interpreted by the courts. *See Logan v. Denny's, Inc.,* 259 F.3d 558, 568-69 (6th Cir. 2001).

The Sixth Circuit has consistently held that receiving negative performance reviews and being placed on a PIP, alone, do *not* constitute intolerable working conditions. In *Caslin v. Gen. Elec. Co.*, 696 F.2d 45 (6th Cir. 1982), the court of appeals held that an employee who received a poor performance review and was placed on a three-month PIP had not produced evidence of intolerable working conditions sufficient to indicate constructive discharge. Similarly, in *Agnew v. BASF Corp.,* 286 F.3d 307,

11

309 (6th Cir. 2002), the Sixth Circuit found no evidence of intolerable working conditions where the plaintiff was placed on a PIP he complained contained "unobtainable" goals, necessitating that he take medical leave due to the resultant "emotional stress and breakdown" and leading him eventually to resign. Simply put, "criticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions." *Id.* at 310. *See Cerjanec v. FCA US LLC,* No. 17-cv-10619, 2018 WL 3729063 (E.D. Mich. Sept. 4, 2018) ("But poor performance reviews are insufficient to establish intolerable working conditions.").

Nothing in Plaintiff's Complaint distinguishes her case from *Caslin* or *Agnew.* Being placed on a PIP and receiving negative performance reviews, without more, do not establish objectively intolerable conditions supporting constructive discharge. She has not alleged a reduction in salary, change in job responsibilities, or any other actions by Defendants that courts in this circuit have considered sufficient to establish intolerable working conditions. Of course, Plaintiff not only alleges that being placed on PIP made her conditions intolerable, but that being placed on a PIP based on false information made it so. Here, the problem is that the Complaint does not explain why that information was false, how Plaintiff knows it is false, or why a PIP based on such false information would necessarily create intolerable conditions of employment.

12

Plaintiff likewise has not established intolerable working conditions via her allegations that Defendants failed to address her discrimination complaints. Although there is precedent for finding constructive discharge where an employee is subjected to "badgering, harassment, or humiliation" by a coworker so intolerable that it moves the employee to resign, Plaintiff here has not pled facts of the type that typically lead courts to find harassment. *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 640 (6th Cir. 2010) (quoting *Logan*, 259 F.3d at 569). She has not provided legal authority indicating that failure to redress vague complaints of discrimination, without more, amounts to creation of intolerable working conditions. Further, Plaintiff's other allegations, such as that Defendants subjected her to "materially different standards and terms and conditions of her employment" on the basis of her race and gender, and "single[d] [her] out" are too conclusory to establish intolerable working conditions, or to otherwise plead an adverse employment action. ECF No. 1, PageID.2-3. *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) ("Broad and conclusory allegations of discrimination cannot be the basis of a complaint.").

Defendants also argue that because Plaintiff was on medical leave for 39 days before deciding to resign, she could not have been constructively discharged. Defendants are correct that an employee who quits has "an obligation not to assume the worst, and not to jump to conclusions too fast." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510,

515 (6th Cir. 1991). But in Plaintiff's case she had followed up with General Dynamics while on leave to determine whether her discrimination complaints would be remedied. Plaintiff says she decided to quit only after learning that no remedial action would be taken. ECF No. 1, PageID.4. As such, this does not appear to be a case where Plaintiff resigned without taking any steps to assess whether her employment conditions would potentially improve.

Although the first prong of constructive discharge, which examines the plaintiff's "objective feelings", is not met here, the second prong may be. *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). This second prong requires alleging that the employer created intolerable working conditions with the intention of forcing the employee to quit. *See Lee v. Cleveland Clinic Found.*, 676 F. App'x 488, 495 (6th Cir. 2017). The Complaint's relevant allegations are somewhat spare but reading the pleading as a whole it allows a possible inference that Defendants were purposefully creating uncomfortable working conditions with the goal of pushing Plaintiff to resign. She claims that after more than a decade of working at General Dynamics, she was suddenly given a negative performance review and placed on a PIP. After she lodged complaints alleging discrimination, Defendants then placed Plaintiff on an indefinite PIP and apparently took no steps to investigate or redress her complaints.

Although Defendants do not raise this issue in their motion to dismiss, and instead focus on Plaintiff's failure to plausibly plead constructive discharge, there is another problem with the Complaint. Plaintiff has likewise failed to establish the fourth and final element of her prima facie case—that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of her protected class. *Laster*, 746 F.3d at 727. For an employee to be similarly situated, he must be similarly situated to the plaintiff in "all of the relevant aspects of is employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998) (emphasis omitted) (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir. 1994)). Under Sixth Circuit precedent, this means the individuals a plaintiff seeks to compare her treatment to must have: (1) "dealt with the same supervisor"; (2) "been subject to the same standards"; and (3) "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Goldfaden v. Wyeth Labs., Inc.*, 482 F. App'x 44, 49 (6th Cir. 2012) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

All that is alleged in the Complaint concerning this element is that Defendants placed Plaintiff on a PIP that "contained terms and conditions of employment that differed significantly from similarly situated white and male employees." ECF No. 1, PageID.3. Plaintiff does

not identify these supposedly similarly situated employees, nor does she explain whether they occupied the same position at General Dynamics as she did, dealt with the same supervisor, or engaged in conduct similar to Plaintiff (all without being placed on a PIP or given negative annual reviews.) Because Plaintiff fails to provide relevant information about the employees she claims were similarly situated, she has failed to properly allege that Defendants subjected her to employment conditions significantly different from those experienced by other similarly situated employees who are not African American, or women. Because Plaintiff has not provided specific allegations that she was treated less favorably than a similarly situated individual outside of her protected class, her Complaint fails to make out a prima face case for Title VII discrimination. Her federal claim would need to be dismissed on this basis, even if the Court were to find she had adequately alleged an adverse employment action in the form of constructive discharge.

## C. For the same reasons, Plaintiff has failed to adequately plead a claim for state-law discrimination under the Elliott-Larsen Civil Rights Act.

The prima facie elements of a discrimination claim are the same under Michigan law as they are under federal law. *Laster,* 746 F.3d at 726 (citing *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003)). Accordingly, the same pleading deficiencies that require dismissal of Plaintiff's Title VII discrimination claims also

warrant dismissal of her claims under the Elliott-Larsen Civil Rights Act claim.

### D. Plaintiff has not specifically pled a claim for retaliation in violation of Title VII.

Title VII also prohibits employers from discriminating against an employee for engaging in conduct protected by Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that: "(1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the 'materially adverse' action." *Jones v. Johanns,* 264 Fed. App'x 463, 466 (6th Cir. 2007) (quoting *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003)).

There is no dispute that the filing of formal discrimination charges with the EEOC and internal discrimination complaints to management represent conduct protected by Title VII. *Laster,* 746 F.3d at 730. Plaintiff's filing of internal complaints with General Dynamics, as well as her formal EEOC charges would thus qualify as protected activity under Title VII. ECF No. 1, PageID.3.

The second element Plaintiff must establish is that her exercise of protected activity was known to the Defendants. *Johanns,* 264 Fed. App'x

17

at 466. (quoting *Abbott,* 348 F.3d at 542). That element is easily met here as the Complaint describes Plaintiff's filing of multiple internal complaints with General Dynamics and communication with the company about her EEOC charge. ECF No. 1, PageID.3. Additionally, Plaintiff says she disputed the basis for her being placed on a PIP with General Dynamics' management. ECF No. 1, PageID.4. Moreover, Plaintiff asserts she followed up with Human Resources regarding the status of her complaints while on medical leave. ECF No. 1, PageID.4. Considering all of these allegations, Plaintiff has more than adequately pled that Defendants knew she was engaging in activity protected under Title VII.

The third element Plaintiff must establish to satisfy her prima facie case for retaliation is that Defendants took action that was materially adverse to her. *Johanns,* 264 Fed. App'x at 466. Plaintiff's burden of establishing a materially adverse employment action is "less onerous in the retaliation context than in the anti-discrimination context." *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 595-96 (6th Cir. 2007) (quoting *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 67–71 (2006)). To establish a materially adverse employment action for a retaliation claim, a plaintiff need only allege that "a reasonable employee would have found the challenged action materially adverse," meaning that "it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster*, 746 F.3d at 731.

Plaintiff's allegations that Defendants took materially adverse actions in the wake of her filing of several discrimination complaints are plausible enough to make out the third element of her prima facie case for Title VII retaliation. Following Plaintiff's complaints, DuQuet allegedly placed Plaintiff on an indefinite PIP and took no steps to investigate or redress those complaints. This, in addition to Defendants' repeated alleged refusal to address Plaintiff's complaints about discrimination at the company, could plausibly have dissuaded her from continuing to engage in protected conduct and could well dissuade any reasonable worker from pursuing a discrimination claim. The allegations as set forth in Plaintiff's Complaint, taken as true, satisfy the third element for a retaliation claim under Title VII.

The final element of a prima facie retaliation claim under Title VII is a causal link between the protected action and the materially adverse employment action. *Johanns,* 264 Fed. App'x at 466 (quoting *Abbott,* 348 F.3d at 542). This connection can be established through direct evidence, or "knowledge coupled with a closeness in time that creates an inference of causation." *Lavack v. Owen's World Wide Enter. Network, Inc.*, 409 F. Supp. 2d 848, 856 (E.D. Mich. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). Although temporal proximity alone cannot support an inference of retaliatory discrimination, it can play a role in establishing a causal connection. *Fuhr v. Hazel Park School Dist.,* 710 F.3d 668, 675 (6th Cir. 2013). *See Cooper v. City of N. Olmsted*, 795

F.2d 1265 (6th Cir. 1986) (expressly rejecting the idea that temporal proximity is sufficient to establish a causal connection between the protected activity and adverse action); *Lavack*, 409 F. Supp. 2d at 847 (finding that temporal proximity, without "further evidence" was not enough to show a causal link).

Plaintiff has not adequately pled this final element of her prima facie case for retaliation because her allegations concerning the causal link between lodging her discrimination complaints and the alleged constructive discharge rest solely on temporal proximity. The Complaint explains that Plaintiff filed an internal discrimination complaint and notified Defendants of her formal EEOC complaint on April 10, 2019. ECF No. 1, PageID.3. Plaintiff also filed an internal ethics complaint of discrimination on April 16, 2019. *Id.* Just two weeks later, on May 30, 2019, Plaintiff claims she was placed on an indefinite PIP. ECF No. 1, PageID.3. The fact that this alleged act of retaliation occurred only 50 days after Plaintiff filed her initial discrimination complaint, and two weeks after her second internal complaint, establishes temporal proximity between Plaintiff's complains about discrimination at General Dynamics, and her being placed on a PIP, which she characterizes as a materially adverse employment action. But the Complaint contains no allegations other than temporal proximity that would tend to establish a causal connection. Because temporal proximity alone will not establish a causal connection between the protected conduct and the materially

adverse employment action, Plaintiff has not adequately pled the fourth element of her prima facie case for Title VII retaliation. That claim must be dismissed.

## CONCLUSION

Plaintiff has failed to adequately plead required elements of her claims for discrimination under Title VII and the Elliott-Larsen Civil Rights Act, as well as Title VII retaliation. In addition, Plaintiff's Title VII claims against Defendant DuQuet must be dismissed on the basis that the federal discrimination statute does not provide for individual liability.

Defendants' motion to dismiss the Complaint for failure to state a claim is therefore **GRANTED**. Plaintiff's Title VII claims against Defendant DuQuet are **DISMISSED WITH PREJUDICE.** The other claims are **DISMISSED WITHOUT PREJUDICE**. The Court also **GRANTS** Plaintiff leave to amend her pleading within 30 days of the date of the Order.

**SO ORDERED.**

Dated: July 30, 2020           s/Terrence G. Berg
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE